IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| Anna C. DeWitt, David Hodge,<br>Lena M. Quick, Lynette Hudson, and<br>Jennifer E. Amerson, all individually<br>and on behalf of all other similarly<br>situated individuals,<br><br>　　　　　　Plaintiffs,<br>　vs.<br><br>Darlington County, South Carolina,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 4:11-cv-00740-RBH<br><br><br><br>**ORDER APPROVING SETTLEMENT<br>AGREEMENT, APPORTIONMENT<br>OF SETTLEMENT PROCEEDS, AND<br>ATTORNEY'S FEES AND COSTS** |

This matter is presently before the Court on Plaintiffs' motion, with the consent of

Defendant, for final approval of the settlement agreement and the proposed apportionment of the

settlement proceeds, along with Plaintiffs' Motion to Approve Attorney's Fees and Costs. For the

reasons set forth in detail below, and after careful review of the documents submitted by the parties

in support of Plaintiffs' motions, the Court hereby approves the settlement of this matter, including

the apportionment of the settlement proceeds and the payment of attorney's fees and costs to

Plaintiffs' counsel.

## I. Procedural History

This is a lawsuit under the Fair Labor Standards Act and the South Carolina Payment of

Wages Act to recover unpaid overtime compensation and to recover compensation for "off the

clock" work required by Defendant. Plaintiffs filed the Complaint on March 28, 2011, as a

collective action under Section 16(b) of the FLSA and also as a traditional class action under Rule

23 of the Federal Rules of Civil Procedure, for the alleged violations of the South Carolina wage

payment statute.[1]

Plaintiffs and members of the Plaintiff class are paramedics and EMTs currently or formerly employed by the Darlington County EMS Department. Plaintiffs generally work a 24/48 schedule, meaning that they usually work a 24-hour shift (7:30 a.m. until 7:30 a.m. the following day) followed by 48-hours off duty. EMS employees are paid by the County on a two-week pay cycle. Prior to November 22, 2010, Defendant compensated its EMS employees for only 20 hours of each 24-hour shift, automatically deducting four hours of every shift for "down time," deducting two, 30-minute meal periods as non-compensable, and adding one hour for a shift differential.

Plaintiffs challenge several aspects of the payroll policies and practices of Defendant's EMS Department that existed prior to November 22, 2010. First, Plaintiffs assert that Defendant's automatic deduction for "down time" did not meet the requirements of the sleep-time exemption found in 29 C.F.R. § 785.22. According to Plaintiffs' brief, Defendant did not maintain a regularly scheduled, bona fide period for sleep each shift, nor did it monitor whether the employees' "down time" was interrupted by a call to duty. Second, Plaintiffs assert that the deductions for meal times were improper because the EMS employees were not completely relieved of duty during the meal times.

There remain a number of unsettled legal and factual issues in this case, primarily involving the propriety of the sleep- and meal-time exemptions and how Plaintiffs' overtime compensation should be calculated.

_____

[1]In the Consent Motion to Certify Collective Action, for Preliminary Approval of Settlement Agreement, to Authorize Notice to Class, and to Schedule Fairness Hearing for Final Approval (Dkt. No. 33), Plaintiffs' counsel conceded that a Rule 23 class in not appropriate under the facts of this case, for a variety of reasons, and withdrew the Rule 23 class allegations.

After extensive discovery, which involved the exchange of written interrogatories and requests for production, along with review of voluminous documents containing wage and hour data for the potential class members, the disputed legal and factual issues had been sharply defined. The parties participated in a mediation on February 1, 2013, before attorney Franklin G. Shuler, Jr., who is a Certified Specialist in Employment and Labor Law by the South Carolina Supreme Court and is also an experienced and well-respected mediator and employment law practitioner. The parties reached a settlement agreement after extensive, arms-length negotiations, subject to approval by the Court.

On July 18, 2013, Plaintiffs filed a Consent Motion to Approve Settlement Agreement, to Authorize Notice to Class, and to Schedule Fairness Hearing, with supporting memorandum of law, affidavits of Plaintiffs and Plaintiffs' counsel, and a proposed notice to the class.

On September 24, 2013, the Court entered an order granting preliminary approval of the settlement agreement, certifying the case as a collective action, and directing that notice of the proposed settlement be provided to all Plaintiffs and potential members of the Plaintiff class. The Court also established a deadline of November 21, 2013, for anyone to file an opt-in form to join the collective action or to file a comment about, or objection to, the proposed settlement. The Court scheduled a settlement fairness hearing for Friday, December 6, 2013, to provide all parties affected by the proposed settlement an opportunity to be heard about the terms of the settlement.

Prior to the Court's approval of the formal notice of the case, a total of 23 individuals, including the 5 named Plaintiffs, had filed forms to opt-in to the case. After the notices were sent, an additional 18 individuals filed opt-in forms to join the case. Of the new opt-in forms, Plaintiffs' counsel has determined that 11 do not have any valid claims for back pay, either because they did

3

not work 24-hour shifts, they were not employed during the period covered by the applicable statute of limitations, or they worked part-time and did not work any overtime hours during the relevant period. In other words, a total of 41 individuals have opted in to the case, but only 30 are receiving some money under the settlement terms discussed herein.

Plaintiffs filed their Motion to Approve Attorneys' Fees and Costs on October 4, 2013, with supporting memorandum of law, affidavits, and other documents. On October 7, 2013, Defendant's counsel filed a response in support of Plaintiffs' motion for attorneys fees and costs, in which Defendant's counsel referenced the provision in the settlement agreement that Defendant would not contest the allocation of the settlement proceeds.

The Court ordered Plaintiffs' counsel to post certain information about the settlement on his firm's web-site (www.rothsteinlawfirm.com) within ten (10) business days following the filing of the Order on September 24, 2013, which was done timely. The Court also ordered the parties to mail Notices of the Settlement, along with individualized letters describing the amount of any payment under the proposed settlement, to each Plaintiff or potential Plaintiff. Pursuant to the Court's Order, on November 7, 2013, Plaintiffs' counsel submitted to the Court in camera detailed information about the amount each class member would receive under the terms of the settlement.

No individuals filed any comment/objection form before the November 21, 2013 deadline. No objections were raised at the settlement fairness hearing.

## II. Proposed Settlement Terms

The proposed Settlement Agreement provides that Defendant will make a gross payment of $225,000.00 in complete settlement of this action. Plaintiffs have proposed, and Defendant has agreed not to contest, the following apportionment of the settlement proceeds: (1) $75,000.00 for

4

attorney's fees; (2) $1,763.03 for reimbursement of costs; (3) $7,500.00 as service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Committee, with individual amounts of $2,500.00 for the lead Plaintiff, $1,000.00 each for the other four named Plaintiffs, and $500.00 each for the remaining two members of the Plaintiffs' Steering Committee; and (4) the remaining settlement proceeds of $140,736.97 paid to opt-in Plaintiffs based on their pro-rata share of the potential value of the collective group's FLSA back-pay claims. The parties have also agreed that all payments to class members will be apportioned as 50% to back pay, subject to payroll withholdings and retirement contributions, and 50% to liquidated damages. This allocation is reflective of the typical award in an FLSA lawsuit, which provides for liquidated damages in an amount equal to back pay, was reached during arms-length negotiations, and strikes an appropriate balance between the potential for wage-based and non-wage-based compensation available under the FLSA. The service or incentive payments to the named Plaintiffs and members of the Plaintiffs' Steering Committee will not be subject to withholding as back-pay, but will be treated as non-wage compensation.

### III. Discussion

Settlements of collective actions under the FLSA require court approval. A court's primary concern in evaluating a proposed class action settlement is protecting absent class members whose rights are affected by the proposed settlement, but who were not direct participants in the settlement negotiations. Kovacs v. Ernst & Young (In re Jiffy Lube Securities Litigation), 927 F.2d 155, 158 (4th Cir. 1991). To approve a class action settlement, a court must ensure that the interests of all class members have been protected, and the court must be convinced that the settlement is "fair, reasonable, and adequate." Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669, 676 (S.D.

5

Iowa 2009). Although the Fourth Circuit Court of Appeals has not directly articulated that standard for approving a settlement under the FLSA, district courts within the Fourth Circuit have incorporated the same standard that is generally applied in evaluating settlements of Rule 23 classes. See Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL 3094955, *11 (E.D. Va. Sept. 28, 2009) (unpublished); Hoffman v. First Student, Inc., 2010 WL 1176641, *2 (D. Md. Mar. 23, 2010) (unpublished).

The Fourth Circuit has articulated a well-established test to determine whether a proposed class-action settlement should be approved, which includes consideration of the following factors: (1) the extent of discovery conducted, (2) the stage of the proceedings, (3) the absence of bad faith or collusion in the settlement, and (4) the experience of counsel who has represented plaintiffs in the settlement negotiations. Flinn v. FMC Corp., 528 F. 2d 1169, 1173 (4th Cir. 1975); In re Jiffy Lube, 927 F.2d at 158-59. Other courts within the Fourth Circuit have applied the factors from the seminal case of City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), in assessing the substantive fairness of a class-action settlement. See South Carolina Nat'l Bank v. Stone, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (citing Grinnell, 495 F.2d 448). The Grinnell case was actually cited with approval by the Fourth Circuit in Flinn. 528 F.2d at 1172-73. The so-called Grinnell factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks

6

of litigation. <u>Grinnell</u>, 495 F.2d at 463. Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements. <u>Clark v. Ecolab, Inc.</u> 2010 WL 1948198, * 7. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve <u>bona fide</u> disputes." <u>Id.</u> (citing <u>Lynn's Food Stores, Inc. V. United States,</u> 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes. <u>Lomascolo</u>, 2009 WL 3094955, at *10. Although the district court has broad discretion in approving a settlement of a class action case, there is a "strong presumption in favor of finding a settlement fair." <u>Id.</u> A settlement fairness hearing is not a trial, and the court should defer to the evaluation and judgment of experienced trial counsel in weighing the relative strengths and weaknesses of the parties' respective positions and their underlying interests in reaching a compromise. <u>Id.</u>

## A. Procedural Fairness

Approval of a class settlement requires the court to ensure that both procedural and substantive fairness are achieved. Procedural fairness is accomplished by providing court-approved notice of the proposed settlement to those whose rights may be affected by the settlement and by affording them an opportunity to be heard about the settlement. Here, the proposed notice previously approved by the court plainly described the terms of the proposed settlement and informed the members of the Plaintiff class of their rights to be heard at the fairness hearing. Defendant's counsel provided mailing labels to Plaintiffs' counsel to mail the initial class notices to each potential class member at his or her last known address according to the County's personnel records. Only two of the notices were returned as undeliverable; however, neither of the two individuals whose notices

were returned as undeliverable appears to have a potential claim for unpaid overtime or other compensation, based on Plaintiffs' counsel's review of the time records: one of them had ceased working for the County more than 3 years prior to the date of the notice, and the other appeared to have been on an extended leave of absence during the relevant period and thus did not work any unpaid time.

Attached to each notice was an individualized letter explaining the range of potential damages for the class as a whole and how each opt-in class member's proportionate share of the damages was calculated.

## B. Substantive Fairness

The substantive fairness prong of the Court's evaluation of the settlement focuses on whether the settlement is "reasonable, adequate and fair." Applying the Flinn factors to this case confirms that the settlement is appropriate and in the best interests of the class as a whole.

As set forth in the Affidavit of Plaintiffs' Counsel, David E. Rothstein, both sides conducted extensive discovery in this case. The mediation occurred shortly before the discovery deadline under the Court's scheduling order. Sufficient discovery was conducted in this case to make both sides fully aware of the factual issues in the case. The settlement was reached after almost 22 months of litigation that had narrowed and defined the legal and factual issues as clearly as possible.

There is no evidence that the settlement was reached through fraud or collusion between counsel or the parties. The mediation was conducted before an attorney mediator who has extensive experience in labor and employment law, both as a practitioner and as a mediator, and the proposed Settlement Agreement was reached after extensive, bona fide, arms-length negotiations. The decisions made on behalf of Plaintiffs were made by a Steering Committee after thorough debate and

8

deliberation. There is no evidence or even suggestion that the settlement was affected by any improper considerations, such as undue influence, collusion, duress, intimidation, or coercion. See Rothstein Affidavit, ¶¶ 15-17.

Next, the settlement agreement was adopted by Plaintiffs at the recommendation of their counsel, who has significant experience in employment and labor law in South Carolina. As set forth in his Affidavit, Plaintiffs' counsel's legal career has involved over twenty years' experience, primarily in employment and labor law. He has been a Certified Specialist in Employment and Labor Law by the South Carolina Supreme Court since February 2006, and was recertified in 2011. He has been involved in other class action matters, both under Rule 23, Fed. R. Civ. P. and the FLSA. His experience and understanding of the FLSA strongly support the Court's approval of the proposed settlement.

Furthermore, the proposed settlement has been approved by all members of the Plaintiffs' Steering Committee. Significantly, no objections to the settlement were raised by any Plaintiff or member of the Plaintiff class before or during the settlement fairness hearing.

Finally, the settlement amount is adequate when viewed against the risks, expenses, and delays inherent in continued litigation. As Plaintiffs repeatedly noted, the most hotly contested issue in the case was the sleep-time issue. Under the current Fourth Circuit precedent on this issue, there is considerable uncertainty about whether any sleep-time deduction was appropriate under the applicable regulations of 29 C.F.R. § 785.22. See Roy v. Lexington County, South Carolina, 141 F.3d 533, 546-47 (4th Cir. 1998). Although it would certainly be possible for Plaintiffs to receive a higher recovery after trial, it would also be possible for Plaintiffs to receive a lower net recovery after trial, especially considering the expense and delay inherent in continued litigation and possible

9

appeals. In light of all of these risks, Plaintiffs appear to have made a reasonable decision to settle this case for the terms set forth in the proposed Settlement Agreement.

### 1. Payments to Individual Class Members

The Court finds that the $225,000.00 total proposed settlement amount is a fair, adequate, and  reasonable resolution of this claim.  The proposed settlement figure of $225,000.00 is well within the range of potential outcomes for the Plaintiff class, given the unresolved legal and factual issues in the case.  Plaintiffs' counsel calculated the potential back-pay awards in this action for the named Plaintiffs and potential members of the Plaintiff class by reviewing the available work records and payroll records for each employee, counting how many full, 24-hour shifts each employee worked on a pay-period by pay-period basis, and multiplying that number times four hours, times 1.5 for the time-and-a-half premium, times each employee's regular hourly pay rate at the time.  The back-pay range for the original twenty-three opt-in Plaintiffs (including the named Plaintiffs) at the time of the settlement was $192,547.92 for a two-year limitations period and $319,136.97 for a three-year limitations period.

Defendant's counsel calculated its range of potential liability for back pay between $18,629.12 and $67,210.94 for all EMS Department employees for 2 years, and between $30,373.01 and $109,581.05 for 3 years.  Defendant's calculations were based on a random sampling of months to determine the percentage of shifts were EMS employees were interrupted between the hours of 11:00 p.m. and 7:00 a.m. by a call to duty that lasted at least 3 hours.  Defendant's counsel then used that average to project the percentage of interruptions that would occur over a year's time.

Plaintiffs apportionment calculations were based on the actual number of full, 24-hour shifts each employee of Defendant's EMS Department worked during the relevant period.  Of the 30 opt-in

10

Plaintiffs who will receive compensation under the proposed settlement, the average payment is almost $4,700.00, or almost 44% of their back-pay amount under the best-case scenario as calculated by Plaintiffs' counsel.

### 2. Attorneys' Fees and Costs

The proposed apportionment of the settlement provides for attorneys' fees of one-third of the gross amount of the common settlement fund, or a total of $75,000.00 for attorneys' fees, plus $1,763.03 as reimbursement of costs advanced by Plaintiffs' counsel in connection with the case. As discussed below, these amounts are fair and reasonable under the applicable standards for reviewing attorney fee awards in such cases.

Attorney's fees in collective actions under FLSA, are subject to court approval. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The gross settlement amount in this case of $225,000.00 was intended by the parties to include Defendant's potential liability for attorney's fees and costs.

There are two general methods for assessing awards of attorney's fees in settlements of class action cases: (1) the percentage-of-the-fund method and (2) the lodestar method. The percentage-of-the-fund method, also known as the common-fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). The common fund doctrine recognizes that where a group of individuals receives a benefit from litigation without directly contributing to its costs, the group would be unjustly enriched unless each member is required to contribute a portion of the benefits to compensate the attorneys responsible for creating or enhancing the common fund. The trend among most courts

11

seems to be towards favoring the percentage-of-the-fund approach to awarding attorney's fees in class action cases, because it "better aligns the interests of class counsel and class members . . . [by] t[ying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." Kay Co. v. Equitable Production Co., 749 F. Supp. 2d 455, 461 (S.D. W. Va. 2010). The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorney's fees on an hourly basis. Id. at 462.

The lodestar method determines the appropriate amount of attorney's fees by applying the well-established factors from the seminal case of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), to determine a "lodestar" figure by multiplying the number of hours expended by class counsel times a reasonable hourly rate. See Local Civil Rule 54.02(A), D.S.C. The loadstar method is used to award attorney's fees to successful plaintiffs after obtaining a judgment at trial in a fee-shifting case. See Hensley v. Eckerhart, 461 U.S. 424 (1983).

Many courts that have used the percentage-of-the-fund method also use a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award is fair and reasonable. The Fourth Circuit has not issued any definitive guidance about which methodology is preferred for awarding or approving attorney's fees in class action cases. Kay Co., 749 F. Supp. 2d at 463. District Courts have considerable discretion in evaluating the reasonableness of an attorney's fee award. Id. Numerous district courts within the Fourth Circuit have used the percentage of the fund method, and many have also employed the lodestar cross-check, in setting attorney's fees in class action settlements. See id. at 463-64, nn. 3-4 (citing cases); Domonoske v. Bank of America,

12

N.A., 790 F. Supp. 2d 466 (W.D. Va. 2011) (approving attorney's fees of 18% of common-fund in

FCRA class action, amounting to $1.791 million of $9.95 million common fund); Smith v. Krispy

Kreme Doughnut Corp., 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (approving attorney's fees of

26% of common fund in ERISA class action, amounting to $1.235 million of $4.75 million cash

common fund) (unpublished).   Other judges in the District of South Carolina have used the

percentage-of-the-fund framework with a modified lodestar cross-check in approving attorney's fees

in a large class action under the FCRA. See, e.g., Faile et al. v. Lancaster County, South Carolina,

C/A No. 0:10-cv-2809-CMC (D.S.C. Mar. 28, 2012) (Dkt. No. 50); Clark v. Experian Info.

Solutions, Inc., C/A No. 8:00-cv-1217-CMC (D.S.C. Apr. 21, 2004) (Dkt. No. 365).

### a.  Percentage of Fund

Plaintiffs' counsel has requested that the Court use the percentage-of-the-fund method for

approving attorney's fees in this case and award one-third (33.33%) of the gross settlement fund, or

$75,000 of the $225,000 total settlement, to Plaintiffs' counsel.

In evaluating the reasonableness of attorney's fees under the common-fund doctrine in class

action cases, courts generally examine the following factors: "(1) the results obtained for the class,

(2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the

case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy."

Kay Co., 749 F. Supp. 2d at 464; see also In re Cendant Corp. Prides Litig., 243 F.3d 722, 733 (3d

Cir. 2001).  Application of these factors demonstrates that Plaintiffs' counsel's request for one-third

of the gross settlement proceeds for attorney's fees is fair and reasonable.

### i.  Result Obtained for the Class

Plaintiffs have achieved substantial victory on behalf of the class with the proposed

13

settlement of $225,000.00.   The settlement enables all opt-in Plaintiffs to receive a substantial

percentage of their back-pay amount under their FLSA claim, after payment of attorney's fees, costs,

and service payments to the members of the Plaintiffs' Steering Committee. In Plaintiffs' counsel's

experience, the proposed settlement of $225,000.00 is substantial for a South Carolina employer,

especially with a relatively small class size of 41 opt-in Plaintiffs.

The case of Roy v. Lexington County, South Carolina, 141 F.3d 533 (4th Cir. 1998), which

involved many issues similar to those presented in this case, included approximately 65 plaintiffs

according to the caption of the case.  After trial and referral of the case to a special master for

calculation of damages, the district court entered judgment for back pay and prejudgment interest

in the total amount of $136,044.10. Id. at 538.

The proposed settlement of this case is an outstanding result for the Plaintiff class.

### ii.  Quality, Skill and Efficiency of Attorney Involved

Plaintiffs' lead counsel is a solo practitioner in Greenville, South Carolina with extensive

experience in employment law.  The attorney fee motion is supported by affidavits of two noted

South Carolina employment law attorneys, M. Malissa Burnette and Brian P. Murphy, who have

offered favorable opinions about his abilities and reputation with respect to employment litigation.

Lead Plaintiff, Anna DeWitt, also submitted an affidavit stating she has been satisfied with

the legal services performed by Plaintiffs' counsel, and she fully supports the requested allocation

for attorney's fees and costs.  The quality, skill, and efficiency of Plaintiffs' counsel justify the

requested attorney's fee.

### iii.  Complexity and Duration of Case

This case was fairly complex, involving several technical aspects of the FLSA and the

accompanying regulations. The case has been pending since March 28, 2011. During the 30-month

pendency of the case, Plaintiffs' counsel has expended considerable effort in prosecuting this action,

as set forth in the Affidavit of David Rothstein and attached time records.

### iv.  Risk of Non-payment

Plaintiffs' counsel agreed to handle the case on a contingency fee basis. The contingency

nature of the fee agreement puts a substantial risk of loss on Plaintiffs' counsel, because he does not

get paid unless he is successful in obtaining some recovery in the case on behalf of Plaintiffs.

With regard to the ability of Defendant to respond to a potential judgment in this case,

because Defendant is a public body, there is less risk of non-payment than with most private

employers. Plaintiffs counsel conceded that he is not aware of any significant fiscal problems within

Darlington County that would affect Defendant's ability to pay a settlement or judgment in this case.

Accordingly, the risk of non-payment should not be a significant factor either way in the

Court's assessment of the attorney's fees requested in this case.

### v.  Awards in Similar Cases

One-third of the recovery appears to be a fairly common percentage in contingency cases,

especially where the total settlement amount is not so large as to produce a windfall of the plaintiffs'

attorneys based solely on the number of class members. In Clark v. Ecolab, Inc., 2010 WL 1948198

(S.D.N.Y. May 11, 2010) (unpublished), the court noted that an attorney's fee percentage of one-

third is "reasonable and 'consistent with the norms of class litigation in [the Second] circuit." Id.

at *8. The Clark court approved attorney's fees of $2 million or one-third of the common fund, in

a collective action under the FLSA. Id.; see also Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D.

669, 677 (S.D. Iowa 2009) (approving attorney's fees of 33 1/3% of total settlement fund of $6.7

million, plus $150,000 in costs, in FLSA collective action on behalf of class approximately 11,400 convenience store employees).

Similarly, in <u>Smith v. Krispy Kreme Doughnut Corp.</u>, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (unpublished), the Court noted, "In this jurisdiction, contingent fees of one-third (33.3%) are common." <u>Id.</u> at *2. The <u>Smith</u> court approved a 26% fee in that case under the lodestar cross-check method, which produced a risk multiplier of 1.6 over the lodestar amount. Plaintiffs' counsel in the <u>Smith</u> case reported 1089 hours of attorney time and 772 hours of paralegal time, and the court approved a fee of $1,235,000 out of the common fund of $4.75 million cash value of the settlement. <u>Id.</u> at * 2-3.

In <u>Bredbenner v. Liberty Travel, Inc.</u>, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (unpublished), the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." <u>Id.</u> at *21. Most of the cases cited by the <u>Bredbenner</u> court awarded attorney's fees at the level of 33.3% of the common fund. <u>Id.</u> The court in <u>Bredbenner</u> approved the requested fees and costs in the amount of $990,000 out of a $3,000,000 total settlement amount, which produced a lodestar multiplier of 1.88. <u>Id.</u> at *18, 22.

The case of <u>Hoffman v. First Student, Inc.</u>, 2010 WL 1176641 (D. Md. Mar. 23, 2010) (unpublished), also approved an attorney fee award of one-third of the total class recovery. <u>Id.</u> at *3 ("Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.").

Ms. Burnette testified in her affidavit that a one-third contingency fee percentage is reasonable and customary in employment cases in South Carolina. (Burnette Affidavit, ¶ 6). This factor supports the approval of Plaintiffs' attorney fee request.

### vi.  Objections

The named Plaintiffs' contingency fee agreements with the undersigned counsel provide for attorney's fees of one-third of the total recovery. Although the Court is not bound by the parties' agreements in this regard, the amount is reasonable and fair in light of the relatively small size of the Plaintiff class and the amount of work required by the case. Furthermore, as discussed above, lead Plaintiff, Anna DeWitt, submitted an affidavit supporting the proposed attorney's fee payment.

Perhaps most significantly, no member of the Plaintiff class submitted any objection to the Court about the requested apportionment for attorney's fees. Accordingly, this factor also supports approval of the requested amount.

### vii.  Public Policy

In the Court's experience, employment cases do not appear to be eagerly sought out by the majority of the plaintiffs' bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved. In situations like this case, where each individual's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties. Therefore, public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases. The court has not been made aware of any public policy concerns raised

by Plaintiffs' attorney fee request.

### b. Lodestar Cross-check

Many courts that employ the common-fund doctrine in evaluating attorney's fee requests under class settlements compare the percentage of the fund to the lodestar calculation as a "cross-check" to ensure that the percentage amount is fair and reasonable. The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). In fee-shifting cases, the lodestar amount is generally considered the presumptively reasonable fee in a case that is successfully litigated to judgment. See Alexander S. v. Boyd, 929 F. Supp. 925, 932 (D.S.C. 1995), aff'd mem. 89 F.3d 827 (4th Cir. 1996). The lodestar figure may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. Id.

The standard for determining a reasonable figure for attorney's fees is set forth in the familiar Fourth Circuit case of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978); see Local Civil Rule 54.02, D.S.C. (expressly incorporating the Barber v. Kimbrell's, Inc. factors):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) this skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226, n.28. The Barber factors are discussed in order below, although many of them overlap with the previous discussion about the fairness of the percentage-of-the-fund method.

18

#### i.  Time and labor expended

According to the Affidavit of David E. Rothstein, Plaintiffs' counsel has expended over 187 hours of attorney time in connection with this matter.  Plaintiffs' counsel estimated that he would spend an additional 20-30 hours of time after October 4, 2013, in connection with the settlement approval hearing and ensuring that the settlement proceeds are distributed properly.  Plaintiffs' legal assistant has also spent over 13 hours of time in connection with this case.

Mr. Rothstein and Mr. Louthian began representing Plaintiffs in mid March 2011.  This case involved significant discovery, including the review and analysis of over 5,800 Bates labeled documents, plus thousands of individual entries on time and payroll records.  Plaintiffs' counsel also worked very closely with the Plaintiffs' Steering Committee.  Although no depositions were taken in the case and no dispositive motions were filed, the work involved in reviewing the County's payroll records and performing calculations of overtime due was substantial and tedious.

The Affidavits of Ms. Burnette and Mr. Murphy discussed above support a finding that the amount of time and labor expended in this case is reasonable.

#### ii.  Novelty and Difficulty of the Questions Raised

In the Court's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law.  The difficulty of this case appears to be appropriately reflected in the hours and time entries submitted by Plaintiffs' counsel.

#### iii.  Skill Required to Perform the Legal Services Rendered

This case involved several difficult legal issues and complex class action procedures, which require a high degree of skill and knowledge.  Employment law is a very dynamic area of the law,

requiring counsel to stay abreast of developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure and the Local Civil Rules of this District.

### iv.  Attorney's Opportunity Costs in Pressing the Instant Litigation

As noted above, Plaintiffs' counsel has documented over 187 attorney hours of time devoted to this case. Such a time commitment represents a significant opportunity cost for an attorney, especially a solo practitioner, in terms of other cases that could have been handled during the same period. In addition, Plaintiffs' counsel testified in his Affidavit that he advanced all of the costs of this litigation, since Plaintiffs did not have the ability to pay the costs associated with this case. This factor thus supports the court's approval of the requested amount of attorney's fees.

### v.  Customary Fee for Like Work

As discussed above, a one-third contingency fee is reasonable and customary in employment cases in South Carolina.

With regard to an hourly rate for purposes of the lodestar cross-check framework, Plaintiffs' counsel testified in his Affidavit that his standard hourly rate in non-contingency employment matters is $300.00. Plaintiffs' counsel further testified the he usually seeks an increase over his normal hourly rate to account for the risk of accepting employment cases like this one on a contingency basis and to compensate him for the beneficial results obtained. The requested lodestar rate of $350.00 per hour for Plaintiffs' counsel is fair and reasonable in this case.

Generally, the hourly rate included in an attorney fee calculation should be the "prevailing market rates in the relevant community." Rum Creek Coal Sales, 31 F.3d at 175. As set forth in the

Affidavits of Ms. Burnette and Mr. Murphy, the requested amount of attorney's fees is well within the market rate for experienced employment lawyers in South Carolina.

### vi.  Attorney's Expectations at the Outset of the Litigation

As note above, Plaintiffs' counsel handled this matter on a contingency basis, pursuant to written fee agreements with the named Plaintiffs as class representatives.  The Consent to Join Lawsuit forms whereby each participant in the collective action opted in to the case contain the following language: "As a current or former employee of Darlington County EMS, I hereby consent, agree, and opt-in to become a party plaintiff herein and to be bound by any settlement of this action or adjudication of the Court. . . . I hereby further authorize the named Plaintiffs herein to retain their counsel of record or to select new counsel, as they shall determine in their discretion, and I hereby further authorize such counsel to make all decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary, subject to the approval of the Court." See Consent to Join Lawsuit form, ¶¶ 6, 8.

The expectations of the named Plaintiffs and Plaintiffs' counsel was that the attorney's fees in this case would be the greater of one-third of the total recovery or the court-awarded fees.

### vii.  Time Limitations Imposed by the Client or Circumstances

The time required by the circumstances of this case are discussed in connection with items (i) and (iv) above.  Neither Plaintiffs nor Plaintiffs' counsel have made the Court aware of any other time limitations that were imposed by Plaintiffs.

### viii.  Amount in Controversy and Results Obtained

The Fourth Circuit has acknowledged that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" Brodziak v. Runyon, 145 F.3d 194, 196

(4th Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). The settlement of this matter represents significant success on behalf of Plaintiffs and the Plaintiff class in challenging the overtime pay practices within Defendant's EMS Department. Plaintiffs enjoyed significant success in this matter and were able to hold Defendant accountable for the County's unlawful pay practices within the EMS Department. In summary, the results obtained on Plaintiffs' behalf in this case amply support the request for attorney's fees and costs.

### ix. Experience, Reputation, and Ability of Attorney

This factor is discussed above in connection with section entitled Quality, Skill and Efficiency of Attorney Involved.

### x. Undesirability of the Case Within the Legal Community in Which the Suit Arose

This factor is also discussed above in connection with the Public Policy section.

### xi. Nature and Length of the Professional Relationship Between Attorney and Client

Plaintiffs' counsel represented the group of named Plaintiffs and the Plaintiff class for approximately thirty months during the course of this litigation. According to Plaintiffs' counsel, this is the first matter for which he has provided any legal services to any of the named Plaintiffs; therefore, this factor does not have much application in the approval of the attorney fee amount.

### xii. Attorneys' Fee Awards in Similar Cases

The attorney's fees and costs requested by Plaintiffs are in line with awards in other employment cases in the District of South Carolina. Plaintiffs' counsel testified in his Affidavit that his most recent attorney fee award in the District of South Carolina on a FLSA case was in the case of Kevin Faile et al. v. Lancaster County, South Carolina, C/A No. 0:10-cv-2809-CMC. In March 2012, the Hon. Cameron M. Currie approved a one-third contingency fee of $500,000 on a gross

22

settlement amount of $1.5 million, which equated to an effective hourly rate of approximately

$410.00 per hour for Plaintiffs' lead counsel. (Dkt. No. 102, March 8, 2012). In 2011 in another

case under the FLSA, the Hon. Richard M. Gergel awarded the undersigned counsel attorney's fees

at the rate of $350.00 per hour. George et al. v. Pro Med Ambulance Service, LLC, C/A No.

2:10-cv-00087-RMG (D.S.C. Oct. 20, 2011) (Dkt. No. 50). Plaintiffs' counsel cited to a number of

other employment cases in state and federal court in South Carolina with similar effective hourly

rates for experienced litigation counsel in employment matters.

Using a rate of $350.00 per hour for the 187 hours Plaintiffs' lead counsel has expended on

the case to date, plus the estimated 20 hours of additional work yet to be performed, along with the

13.8 hours spent by Mr. Louthian, would yield a lodestar amount of $77,280.00, which is actually

greater than the $75,000.00 contingency amount. Even at Plaintiffs' counsel's regular hourly rate

of $300.00 per hour, the loadstar amount would be $66,240.00, equating to a risk multiplier of 1.13

times the lodestar amount, which is well within the range of reasonable attorney's fee amounts in

common fund cases. See Kay Co., 749 F. Supp. 2d at 470 ("Courts have generally held that lodestar

multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The Kay court

approved a requested fee amount that produced a lodestar multiplier between 3.4 to 4.3 times the

lodestar amount. Id.; see also Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at *3

(using lodestar cross-check and approving multiplier of 1.6 times above the lodestar amount).

### C. Service Payments to Named Plaintiffs and Steering Committee Members

The proposed apportionment of the settlement also provides for the payment of additional

amounts to the named Plaintiffs and to the members of the Plaintiffs' Steering Committee for

severance or incentive awards in the total amount of $7,500. Plaintiffs propose to divide this amount

as $2,500.00 to the lead Plaintiff, Anna C. DeWitt; $1,000.00 each to the other four named Plaintiffs, David Hodge, Lena M. Quick, Lynette Hudson, and Jennifer E. Amerson; and $500.00 each to the two other members of the Plaintiffs' Steering Committee, Linwood Epps and Gary White.

It is very common in class action cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery. Such payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action. Service or incentive payments are especially appropriate in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions. See, e.g., In re Janney Montgomery Scott LLC Fin. Consultant Litigation, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs) (unpublished); Stevens v. Safeway, Inc., C/A No. 2:05-cv-01988-MMM-SH, pp. 18-20 (C.D. Cal. Feb. 25, 2008) (awarding incentive payments of $20,000 and $10,000 each to named Plaintiffs) (unpublished); Frank, 228 F.R.D. at 187 (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000) (unpublished); Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669 (S.D. Iowa

2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case on behalf of over 11,000 cooks and cashiers employed by convenience store chain); Clark v. Ecolab, Inc., 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards to 7 named plaintiffs in hybrid class/collective action involving unpaid overtime) (unpublished); and Hoffman v. First Student, Inc., 2010 WL 1176641, *3 (D. Md. Mar. 23, 2010) (affirming $3,000 service payments to seven lead plaintiffs in FLSA case of over 750 school bus driver and aides, with total gross recovery of $1.55 million) (unpublished).

Here, the total of the service payments requested by Plaintiffs of $7,500.00 represents 3.33% of the gross amount of the settlement in this case. The largest proposed amounts for the lead Plaintiff ($2,500.00) represents 1.11% of the gross settlement amount. The average proposed service payment among the 7 members of the Plaintiffs' Steering Committee is $1,071.43 and is approximately 20.35% of the average $5,262.43 payment that the seven Committee members will receive on their underlying claims, apart from the incentive payments.

The record demonstrates that the lead Plaintiffs and the members of the Steering Committee have all devoted substantial amounts of time to this case, and all have taken great personal, career risks in serving as the driving force behind this lawsuit against the County. The lead Plaintiff has devoted dozens of hours to the case, including interviewing and selecting counsel, reviewing pleadings, assisting with discovery responses, participating in strategy meetings with the committee, communicating with counsel about all aspects of the case, and participating in the mediation of this case. (See Affidavit of Anna DeWitt). The amounts of the proposed service payments were thoroughly discussed and debated among the Plaintiffs Steering Committee. The proposed amounts of service payments to the two named Plaintiffs and the two committee members were based on their

25

corresponding risks and level of involvement in the case.

### IV.  Conclusion

For all of the foregoing reasons, the Court hereby grants final approval of the proposed settlement in this case, including the proposed apportionment of the settlement proceeds to individual Plaintiffs, the payment of service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Committee, and the payment of attorney's fees and costs to Plaintiffs' counsel from the gross settlement proceeds. *All settlement payments shall be made within 30 days of the date of this order.* *RBH*

IT IS SO ORDERED.

R. Bryan Harwell
United States District Judge

December ___6___, 2013

Florence, SC.

26